# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)* )<br>Samsung Galaxy )<br>Model: A32 )<br>Seized as FP& F: 2025255200005601 Item: 0004 ) | Case No. 25MJ8070 |

FILED
Jan 31 2025
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY   s/ VeronicaCota   DEPUTY

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-3, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Fernando Quiroz*
*Applicant's signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephone___ *(specify reliable electronic means)*.

Date: 01/31/2025

*Judge's signature*

City and state: El Centro, California     HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**        Samsung Galaxy cellphone
            Model: A32
            Seized as FP& F: 2025255200005601 Item: 004
            Seized from Christian Norberto IBARRA-Salazar
            **(Target Device #3)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-4 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of December 18, 2024, up to and including January 18, 2025, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:** Samsung Galaxy Cellphone
Model: Z Fold
Seized as FP& F: 2025255200005601 Item: 002
Seized from Dylan FOX
**(Target Device #1)**

**A-2:** Mini Global Cellphone
Model: 14
Seized as FP& F: 2025255200005601 Item: 003
Seized from Sergio Israel MERCADO-Valenzuela
**(Target Device #2)**

**A-3:** Samsung Galaxy Cellphone
Model: A32
Seized as FP& F: 2025255200005601 Item: 004
Seized from Christian Norberto IBARRA-Salazar
**(Target Device #3)**

**A-4:** Honor Cellphone
Model: RKY-LX3
Seized as FP& F: 2025255200005601 Item: 005
Seized from Gregorio ANZUA-Montalvo
**(Target Device #4)**

as further described in Attachments A-1 to A-4, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Dylan FOX (FOX) for transportation of illegal aliens Sergio Israel MERCADO-Valenzuela

1

(MERCADO), Christian Norberto IBARRA-Salazar (IBARRA), Gregorio ANZUA-Montalvo (ANZUA) (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from FOX and the Material Witnesses on or about January 17, 2025, incident to the arrest of FOX and the Material Witnesses. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

**EXPERIENCE AND TRAINING**

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8, 18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of

undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.  Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.  The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to

make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

4

  f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On January 17, 2025, Border Patrol Agent (BPA) W. Burton encountered a 2017 Dark Gray Tesla Model S bearing California license plate while travelling east on Interstate 8 (I-8) at approximately 9:35AM. BPA Burton recognized that the Tesla was displaying some of the hallmark characteristics of a vehicle driven by someone involved in a violation of 8 USC 1324 (Alien Smuggling). Initially BPA Burton witnessed the Tesla driving much faster than the surrounding flow of traffic. As soon as the Tesla was parallel to BPA Burton it's rate of speed dramatically decreased, and it noticeably veered toward the median while staying within the boundaries of its travelling lane. This indicated to BPA Burton that the driver was focusing on his patrol vehicle, causing the Tesla to drift in the direction the driver was looking. BPA Burton followed the Tesla, which ultimately revealed to be driven by FOX, Dylan (FOX) along with another front passenger, for approximately 20 miles while conducting record checks and developing enough articulable facts to conduct a vehicle stop of the Tesla. BPA Burton was able to clearly see five silhouettes through the rear window of the Tesla as he followed the vehicle. However, when he pulled alongside the vehicle three of the five silhouettes attempted to conceal themselves below the side windows of the vehicle.

11. Additionally, the driver and front passenger silhouettes never looked in his direction and took a statue like posture while BPA Burton drove alongside them for an extended period which indicated an extreme level nervousness of detection.

12. Furthermore, the Tesla randomly changed speeds multiple times without warning. The speeds ranged from below the posted speed limit, which in this area is 70 Miles Per Hour (MPH), to excess of 80MPH. To BPA Burton this indicated a sense of indecision from the driver. Once BPA Burton had established a reasonable level of

1  suspension to stop the Tesla, he continued to follow the vehicle until other agents in the area were able to catch up to his location to assist in the stop.

13.  Approximately one-half mile east of the Sunbeam Rest Area on the eastbound side of I-8, Border Patrol Agent (BPA) J. Lopez initiated a traffic stop of the Tesla after confirming the license plate of the vehicle.  The Tesla yielded to BPA Lopez' lights and sirens.  BPA Lopez approached the Tesla and identified himself as a United States Border Patrol Agent to FOX and SALCEDO.  BPA Lopez ordered FOX to lower the rear passenger window and immediately observed three individuals with their eyes closed pretending to sleep in the back seat.  One individual was laying on the floor and the other two were slouched down trying to conceal themselves.

14.  BPA Lopez asked all the occupants of the vehicle about their legal status in the United States.  The driver and passenger responded to being United States Citizens.  BPA Lopez asked the three passengers if they had the proper immigration documents to be in or remain in the United States.  All three subjects ignored BPA Lopez' question. BPA Silva, who was positioned on the passenger side of the vehicle, asked the passenger side rear occupant if he had any immigration documents.  The subject replied "No."  At that point, the other two passengers told BPA Lopez they did not have any immigration documents.

15.  BPA J. Fuentes arrived on scene and approached the passenger side of the vehicle.  He escorted the three suspected illegal aliens to a location separate from the driver and passenger. BPA Fuentes asked all three subjects for their identification.  BPA Fuentes then asked all three subjects where they were born, to which they all replied "Mexico." BPA Fuentes asked all three subjects if they had been previously arrested attempting to enter the United States.  ANZUA and IBARRA answered "Yes."  MERCADO answered "No."  It was later determined MERCADO had lied to BPA Fuentes and had in fact been arrested for previously entering the United States illegally.

16.  The combination of BPA Lopez, Fuentes, and Silva's questioning led agents to believe all three subjects had entered the United States without the proper immigration

documents to be in or remain in the United States. All five subjects were placed under arrest. They were all subsequently transported to the ELC Centralized Processing Center to be enrolled in the IDENT/IAFIS/e3 systems

17. During a post-Miranda statement, FOX stated he left his residence in Eastvale, CA, in the morning on January 17, 2025, and was driving with his friend. FOX stated he responded to a Craigslist advertisement of drivers needed. FOX established contact via WhatsApp with an unknown individual. He accepted to drive to San Diego and pick up an unknown number of individuals and transport them to Los Angeles for $1000. FOX was given a google pin drop location and the description that several individuals will be standing by a mailbox on the side of the road. When he arrived at the pickup location, he saw three individuals. FOX stated that when the three subjects entered the vehicle they only said "Los Angeles" and a hand gestured moving forward. FOX stated that the individuals did not speak English and that he does not speak Spanish, therefore they were not able to communicate any further. FOX was headed to El Centro, California to recharge the Tesla and then continue to drive the three individuals to an unknown location in Los Angeles. FOX was going to receive payment once he delivered the individuals.

18. Material Witness ANZUA stated that people in his town told him smuggling instructions, but never met anyone, and he was charged $9,000.00 USD to go to Las Vegas, Nevada. ANZUA stated that he walked across illegally through a mountainous area on Wednesday, January 15, 2025. ANZUA stated that the smuggler told him to walk north for about two hours onto a road, and that he would be picked up at that approximate location by a dark gray electric sedan, he was shown a picture of the car on his phone. ANZUA stated that once he reached the road they waited for extended period until he received a phone call from the smuggler telling him that a car was there to pick them up. ANZUA stated he jumped into the back seat of dark gray car of unknown manufacturer. According to ANZUA the driver was supposed to transport them to an unknown address in California. ANZUA was unable to identify the driver in a six-person photo lineup.

7

19.     Material Witness IBARRA stated that his wife's uncle made the smuggling arrangements with an unknown smuggler who would charge him $7,500.00 USD. IBARRA stated that he walked across illegally through a mountainous area on Wednesday, January 15, 2025. IBARRA intended to travel to Des Moines, Iowa with his family. IBARRA stated that the smuggler told him to walk north for about two hours onto a road, and that he would be picked up at that approximate location. IBARRA stated that once he reached the road they waited for extended period until he received a phone call from the smuggler telling him that a car was there to pick them up. IBARRA stated that he knew it was the car, because it was there when he received the call. IBARRA stated he jumped into the back seat of the weird looking car (TESLA). According to IBARRA the driver was supposed to transport them to Los Angeles, California. IBARRA stated that he realized the vehicle had come to a stop and Border Patrol Agents had surrounded the car. IBARRA was unable to identify the driver in a six-person photo lineup.

20.     During a search incident to arrest of FOX and the Material Witnesses, four cellphones were found: a green Samsung Galaxy cellphone (Target Device #1) was found by BPA A. Silva on FOX's person and FOX claimed ownership of this cellphone. A black Mini Global cellphone (Target Device #2) was found by BPA W. Burton inside of MERCADO's backpack and MERCADO claimed ownership of this cellphone. A blue Samsung cellphone (Target Device #3) was found by BPA W. Burton on IBARRA's person and IBARRA claimed ownership of this cellphone. A black Honor cellphone (Target Device #4) was located by BPA W. Burton on ANZUA's person and ANZUA claimed ownership of this cellphone. All cellphones were seized as evidence.

21.     I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on

December 18, 2024, up to and including January 18, 2025, the day after the arrest of FOX and the Material Witnesses.

## METHODOLOGY

22. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24.   Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

## CONCLUSION

25.   Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that FOX and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by FOX, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Fernando Quiroz*
Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 31st day of January, 2025.

_____ 03:06 p.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

10

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**              Samsung Galaxy Cellphone
                      Model: Z Fold 4
                      Seized as FP& F: 2025255200005601 Item: 002
                      Seized from Dylan FOX
                      **(Target Device #1)**




The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**         Mini Global Cellphone
            Model: 14
            Seized as FP& F: 2025255200005601 Item: 003
            Seized from Sergio Israel MERCADO-Valenzuela
            **(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**    Samsung Galaxy cellphone
Model: A32
Seized as FP& F: 2025255200005601 Item: 004
Seized from Christian Norberto IBARRA-Salazar
**(Target Device #3)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:**         Honor cellphone
            Model: RKY-LX3
            Seized as FP& F: 2025255200005601 Item: 005
            Seized from Gregorio ANZUA-Montalvo
            **(Target Device #4)**




The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-4 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of December 18, 2024, up to and including January 18, 2025, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.